Well, good morning again and welcome to the Fifth Circuit. We have five panels sitting this week. The other four are in New Orleans. And so we have the pleasure of being here at the Paul E. Baird Law Center. And so Judges Duncan and Inga Hart are really pleased and privileged to be here. Our court, perhaps a little more than some circuits, does sit at law schools periodically. And so we don't do it regularly, but I think last month we had a panel to sit at South Texas. And I know we've sat at Lubbock and we've sat at SMU and so forth. So part of our arrangement has been that. So we appreciate it. We have a full array of arguments for this morning. We have five cases. We may somewhere between a third and a fourth case take a short recess, but otherwise we'll go through the docket. The first case up is number 23-20171, Disability Rights v. Roy Hollis. Mr. Nobles? Thank you, Your Honor, and good morning. May it please the court. This is a case involving two important federal statutes and more specifically the meaning, interpretation of the text of particular sections of those statutes and the regulations that have been promulgated pursuant to those acts. One of them is 42 U.S.C., the P&A Acts we call them. Those are acts that advocate for the interests and rights of people in psychiatric and mental illness settings. My client, Houston Behavioral Hospital, is a covered entity that deals a lot with the P&A, but also with HIPAA, which is the other federal statute at play here today. That's in 45 U.S.C. It's not a civil rights provision like the P&A Acts are. It is a health care regulatory provision. And there's a very specific term in HIPAA, required by law, that's found in 42 U.S.C. 1805 and 42 C.F.R. 51.41. And required by law, I'm sorry, those are the P&A Act provisions. The HIPAA provision states required by law at 45 C.F.R. 164.512. And required by law has a specific textual meaning under HIPAA, and that is that HIPAA regulates covered entities like my client, Houston Behavioral, and requires it to protect protected health information, which we call PHI. So my client can't release PHI unless it's allowed to under that required by law, which allows disclosure. So required by law comes from HIPAA. And there's a limitation. Are there cases that indicate if you pursue into a lawful subpoena or, better yet, a court order enforcing the subpoena, it seems like your duty would be to verify the lawfulness of the request, the compulsion of it, the legal compulsion of it, and then to contest it as you're doing here to make certain that it's not you making the decision, or your client, I should say, but rather that you're following a court order. Maybe I'm getting ahead of what you're about to say, but that's how I always understood it. It's very helpful to be led down the street. I'm going down, so I appreciate it, judging the heart. It certainly encompasses court orders and subpoenas, lawful processes. We certainly have to respect lawful processes as a covered entity, but we're certainly allowed to test subpoenas and legal processes by challenging them in the district court. And if we believe that the district court got the text of the law wrong, to seek appellate review here. And that's how we got here today, because our position is that the legal processes that were enforced by the district court in this case are not faithful to the text of the required-by-law provision in HIPAA. Do you take the position of your client that HIPAA, across the board, bars any type of disclosures? We certainly do not, Your Honor. Judge Seward, we do not take that position. In this case, we have produced a broad number of documents. But your argument is that the video has the face of other persons beyond the individual here. And because of that HIPAA box disclosure, that pretty much is. And the reason why is that the P&A Act required-by-law, the P&A Act has a provision that isn't really spelled out in its full context in the litigation. It's helpful to understand what required-by-law means in this case. In this case, Disability Rights Texas, DR Texas, has a concern about an individual patient at Houston Behavioral. With his authorization, they are allowed to obtain records related to that individual's care. And this is the first case to reach a circuit that I'm aware of. And truly, there's no district court case that reached the result here, which is that one individual, by authorizing the release of his records, has implicated the protective health information, the PHI, of a large number of other people. That's not what the law requires. Required-by-law in HIPAA expressly states in the same section of the CFR, and that is 45 CFR 164.512, it says that required-by-law is limited to the relevant requirements of such law. And to step back and look at the claims in this case, under the P&A Act, there are claims by one individual. That individual has the right to authorize the release of his records. There is no dispute in this case that faces are protected health information. That is found in 45 CFR 514. A face, a name, a social security number, all the things that you see redacted in sealed court records, all of that stuff is protected health information. And in the context of my client's business, which is psychiatric intensive care, the confidentiality of the identity of people who find themselves in that place. The district court's injunction or order was narrowly tailored to the one patient issue, correct? We believe that it should be, but it was not, because the district court ordered the release of a videotape that includes the individual whose initials are GS. That individual is in a videotape. It's undisputed in the case that there are other individuals who are being treated in a psychiatric intensive care unit, a PICU, who are depicted facially in that video. That's what I said. He says, accordingly, the court finds a narrow permanent injunction directed only at evidence relating to GS is appropriate at this time. So his injunction was narrow as to that one patient. They seem to have left it to you all to figure out how to make that happen. If it were paper, then we'd be talking about redactions and that kind of thing, right? Is it the logistics of complying that's really the problem? In other words, if it's possible to fade out the image of other people and so on and so forth, is that the part that's the real rub? Do you feel that's causing your client to have to go beyond what it should or whatever? I'm not passing judgment on it. I'm just trying to cut to the nub. He said only GS. So if the images are of other people, it's not possible to blur out the others and so forth, just as in paper we might redact unrelated. That's exactly right, Your Honor. But that's not the problem. The problem is not what the technology allows. I have relatives in tech fields. I'm not one. But in this case throughout, DR Texas has sought what they call unredacted video recordings. They have never sought to allow us to deal with the problem caused by what is a new and largely unprecedented fact situation that hasn't been covered by very many district courts and has never been covered in a case where the faces of other people in the videotape are patients who have protected health information that is implicated by the release of this videotape. Let me ask you the practical question here, which is I take your point, and your point is well taken. But when the video is released to Disability Rights Texas, under the federal law that they are claiming a right to that video, aren't they required to keep all of this confidential? Meaning the third parties that you're rightfully concerned about, doesn't the law require them to keep those confidential, those images? Their act does require them to respect confidentiality as though they were a health facility. So okay, and why does that not solve, so to speak, the HIPAA problem with respect to the third party images? I think the best answer to that is it is extra textual. It is not a textual allowance under the PHA, the PNA, or HIPAA. Well, when the law, I'm going to get the acronym wrong, I'm bad, PAIMI, that law, doesn't it grant organizations, quote, access to all records of any individual who is a client of the system? So these records, I mean they are records of the individual in question, right? I get that they also have third party images. They do. But isn't that a textual mandate with respect to this record? There are very few cases that even address the issue of videotape in this context, and there are no cases other than one before this court today. I guess I was just focused on the language of the statute. Sure. The language of the statute is limited to individual records, records of that individual. Well, I guess my question is slightly different. It says access to all records of any individual who is a client. Doesn't that encompass the videos here? That certainly would encompass the videos here. There is a provision in HIPAA, the de-identification provision in the CFR at 45 CFR 164.514, which requires that any protected health information contained in that videotape or any other record, that that information be de-identified. The technical challenge of de-identifying faces in a video is a problem that is not as profound as it might have been before AI and other technology. But we're on the cutting edge of an issue with this issue here. We could just turn it over to AI and have no problem at all. Well, there's a problem there. My HIPAA lawyers have explained to me that you don't want to make a mistake when you release a video like this because it's a breach of HIPAA for us to release PHI without authorization of the person who owns that PHI. There's no provision in either statute that allows the PHI of third parties who are patients who have PHI, who are in potentially compromising positions in a PICU. There's no provision that allows that to be shared with anyone. I mean, unless it's required by law, right? Unless it's required by law. And that required by law section is limited to, in this case, an authorization by an individual of that individual records of 42 CFR 51.41. 42 CFR 51.41. Okay. Counsel, did I understand you earlier, a few minutes ago, your friends on the other side don't find it acceptable to produce, assuming that faces could be redacted or blurred, that's not acceptable to your opponents? Or is that something that would be a solution but cannot practically be done? Well, I'm the appellate lawyer. I didn't handle this case in the district court. I don't see any evidence that that has been a serious point here. This court, when this case was filed, in the process of dealing with an administrative stay and a stay, this court asked the parties that question. My side objected to the expense because we don't know. We've never had to do it. We don't know. They said that it would take too long for redaction. There may be a compromise here. This court is not in the best position to decide what that compromise is. What this court is in the best position to do is to hold that the district court erred by ignoring the text of HIPAA and by misinterpreting the text of the P&A Act to require us to produce something that the text of those acts doesn't allow us to reveal. Your time is running out. I wanted to ask you one last question. Do you see an exhaustion requirement with regard to HIPAA and having to produce under the compulsion of law, or can you just accept a district court order? In other words, where do you see your efforts ending at withholding information? If I just have a minute, I have 10 seconds left. I'll finish my answer to the question. We have an ability to respond to a district court order, but we have a right to seek appellate review if that district court order interferes with privacy rights, interferes with the operations of our business, creates HIPAA violation, HIPAA breach rights against us, and at this point we believe that this court is the court to decide what HIPAA and what the P&A require and how they interact. You somewhat answered the question I guess I was going to ask. I always want to know, well, what is it to relieve you? You really won't. When the district court issued its order, it said what it did, but then it said, I hope that the parties will be able to resolve sort of what the parameters were. Well, that didn't happen. Then when it got in our court, I think y'all were in our mediation program, and it looked like that was kind of perhaps could be worked out, whatever the parameters of this might be, and I guess that didn't happen, but I just always want to know what. You said it then, but the express holding you want from the panel is all that you just said, that the district court did all that? We asked in our prayer, in our brief, we asked that this court reverse the summary judgment and permanent injunction in favor of D.R. Texas and grant the relief we sought in our own motion for summary judgment, which is that, what I just said. Okay. But this court has the discretion to do what it wants to, obviously. Not quite. But it is. This court has much greater discretion than the parties do to decide what the next step will be. All right. Well, we appreciate it. We have y'all. I mean, you have reserved your above time, so I'm sure you'll enlighten us. All right. Let's hear from the other side. Disability rights. Ms. Luther, you're up. Good morning. Courtney Luther for Plano-Papelde, Disability Rights, Texas. May it please the court. This case is about statutory construction of two federal statutes, but opposing counsel grossly misreads what the PNA acts require. Opposing counsel talked earlier about the all records of any individual provision. That's the provision in the PNA acts that allow DRTX and PNAs to access records. I thought I read the text of that one, but I wouldn't rely on what I said. The statute itself entitles DRTX to, quote, under three circumstances, two of which are relevant in this case, where the PNA has the consent of the victim or when there is probable cause to believe the victim has been subject to abuse and neglect. While only one of those is necessary, we do have both in this case because we do have the consent of GS and probable cause to believe there was abuse and neglect. Once that requirement is met, that entitles DRTX to access all records of that individual victim. There have actually been many cases, including two circuit court cases, housed in by now Supreme Court Justice Alito, that specifically determined what the plain language of all records of any individual means. Justice Alito held that of any individual means any records related to that individual. They don't have to be records exclusive to that individual, but encompass all records related to that victim and relevant to the investigation. In that case, the records at issue were peer-reviewed records, which by their nature contained third-party information. The court in that holding determined that PNAs under the plain language of the statutes were entitled to peer-reviewed records, unredacted peer-reviewed records. Do you recall in that case, which I've got a snippet from it here, but I haven't read the entire case, was there any argument about redactions in those cases? If there's information about other parties, then it should be redacted or anything like that. I don't believe that redaction was specifically discussed in that case. There is a district court case, Frudenthal, that that issue actually comes into play. In that case, a Wyoming PNA was asking a state hospital to routinely turn over all incident reports to the PNA and without any probable cause as to anyone or consent from any individual. In that case, the court held that the PNAs were entitled to redacted incident reports, but upon receipt and reviewing those incident reports, if they determined there was probable cause as to a specific individual or event, they were then entitled to the unredacted versions. While redaction isn't included in the plain language, it essentially is in other terms because all records of that individual means related to that individual, and multiple courts have determined that. Do you believe that DR Texas is independently governed by HIPAA, covered by HIPAA's confidentiality requirements? So we believe that there is no issue between HIPAA and the PNA acts. The required by law exception under HIPAA, while only court orders were discussed earlier, it includes specifically mandates contained in law that compels entities to make use or disclosure of PHI. That includes statutes that require protection of information. PNA acts here require... What I'm asking about specifically, I believe Judge Duncan asked your opponent about some language in the federal law that creates your client, that your client has been created pursuant to a federal law. It has a confidentiality obligation. Yes. Do you also believe that HIPAA applies to information possessed by DR Texas? It does. There, again, is no conflict. We have a statutory duty of confidentiality that requires us to hold any records that we receive to the same level of confidentiality as the original record holder, which sometimes means that we're unable to even release our clients on records to themselves. If it's possible to do so, would it be acceptable? It seems like, at least on cases that have been in the mainstream, the old blue dot or the unfocused image, would that be acceptable if a video record was produced to you that had been redacted in that fashion, or is that unacceptable? In our opinion, Your Honor, that would be unacceptable because not only do the plain language of the PNA acts not require it, but it would simply be unworkable, and it would inhibit DRTX's ability to enforce its mandate, which is to investigate abuse and neglect. Their redaction would mean that we are unable to identify potential witnesses who maybe saw something that the video doesn't portray. The video here is silent, so maybe there were things said. You just don't know. Those witnesses may have really important information. Well, this may be neither here nor there. It may be entirely unworkable, but would it be acceptable to be able to view the videos unredacted while they're in the possession of your opponent? In other words, they don't physically produce them to you or transmit them to you, but they permit them to be viewed. Would that be acceptable? Again, we believe that it would not be acceptable because these facilities particularly, Texas is a big state, and there are numerous hospitals all over the state, and while we do have employees throughout the state as well, we don't always have the ability to drop everything and go out to these facilities to view records whenever the need arises. Again, the acts allow a disclosure of those records, copies of those records. Well, I guess I was trying to fine-tune what disclosure might mean in terms of helping your client pursue its function, its stated mission, vis-a-vis the concerns that someone in the position of the appellant in this case would have. Okay, well, I'm just thinking out loud on that, so proceed. Thank you. There were some questions as to, I think, confusion about what the district court order actually ordered. In the lower court, we were asking for a permanent injunction for GS but also a broader injunction for other cases in the future because at the time and still currently, we do have pending cases, investigations with defendants' hospital on the same issue where they are withholding video because there are third parties present. In that case, or in the lower court, the district court ordered the limited injunction just to GS but he explicitly stated that he hopes that we would be able to, that defendant would, under his clarified responsibilities, be able to work with us in providing, essentially, those records. Opposing counsel talked about de-identification as a possibility, but, again, de-identification only works if there is no exception. And here, the PNAX clearly allow disclosure, or require disclosure, of records related to an individual as long as we have the consent of that individual, even if they have third party information. Therefore, it falls under HIPAA's required by law exception. So there is no conflict, and the statutes can be read harmoniously together. Well, their concern about the disclosure of third parties is definitely legitimate, and they're concerned about liability and so forth, I'm assuming. So your viewpoint is that it's easy to see that if it's a video, it might more probably not have multiple images in it, as opposed to the contrary, just because it's a video. Patients and so forth in a room, it's likely that would be the case, more so than it's just a video with that one person in it. So what you say to cure or satisfy, you say HIPAA is not just an automatic defense, but what's the means to ameliorate the concerns they have about the third party? Is it the redaction or what? It's not redaction, Your Honor. It's the fact that HIPAA considered those protected interests of those third parties and still enacted exceptions where covered entities are able to disclose without that authorization. And as discussed earlier, we do have a statutory duty of confidentiality, which we and other PNAs do not take lightly, because without that duty, we wouldn't be able to access records that are necessary for us to conduct investigations. In this case, amicus have also provided support by numerous consumer advocacy groups, so individuals who would be those third parties, the patients in the video, they understand that DRTX has to have access to records in order to conduct its investigations and that these records sometimes include third party information. And they understand that DRTX's duty of confidentiality means that there's no risk of that information being re-disclosed or improperly re-disclosed. And so not only is defendant not liable because it's allowed under HIPAA, I know in their briefing they discussed fears about the Office of Civil Rights, and we have DOJ here today stating, in an amicus support briefing, stating that there is no conflict, that they would not be liable for penalties because the acts can be read together and there's no conflict. What about liability to individuals who are in the video themselves? Assuming that DOJ can represent that the government would not assert liability, what about liability to the individuals whose identities or whose information is disclosed? Yes, Your Honor. So again, those identities, because the PNAX allow it and it therefore falls under HIPAA as required by law exception, there is no violation. And so those people's, those third parties' interests are still protected because the hospital followed their duty under HIPAA. DRTX has its own duty of confidentiality. There's no issue that's been violated. Those interests are still protected. If Your Honors have no more questions, I appreciate your time. Thank you very much. Thank you. Good morning, Your Honors, and may it please the Court, my name is Grant Levine and I represent the United States as amicus. Houston Behavioral repeatedly cites its fear of HIPAA liability for why it does not want to disclose a video that may show its staff abusing a patient. The United States would like to put those fears to rest. The Department of Health and Human Services enforces both HIPAA and the Protection and Advocacy Acts, and the agency's position has been clear and consistent since those statutes were enacted decades ago. First, the Protection and Advocacy Acts bestow broad authority on protection and advocacy organizations to review confidential materials. Second, health care providers face no liability for producing those materials to protection and advocacy organizations. In fact, the Department of Health and Human Services has never imposed a penalty under HIPAA to a health care provider for providing confidential information to a protection and advocacy organization. And Houston Behavioral is not going to be the first, at least under the circumstances here. And that is because the text, structure, and intent of the Protection and Advocacy Acts mandates that Disability Rights Texas gets full disclosure, unredacted disclosure, to the video. It doesn't say unredacted disclosure, though, does it? It doesn't say unredacted, but it does say all records and all records of any individual. So Congress could have said all non-confidential records. Congress could have put in records. But really what Houston Behavioral is asking you to do here is to add in a new requirement that Congress did not do, and that would not be appropriate for this court. Will we be the first circuit to address this particular question? I know I heard a discussion of a third circuit case that dealt with that language of any individual. Lots of circuits have addressed the issue of interpreting the Protection and Advocacy Acts, and do the acts allow confidential third-party disclosure of confidential third-party records. The Third Circuit has addressed this, the Second Circuit has addressed this, the Tenth Circuit has addressed this, and the Seventh Circuit. The circuits are all unanimous that when a Protection and Advocacy Organization needs confidential records, the acts allow them to be disclosed. Do any of those cases deal with the required-by-law language in HIPAA? They do not. That would be something new here. And I do want to talk about the required-by-law exception and put this into context here. The Protection and Advocacy Acts came first. Those were enacted, the first ones, nearly 50 years ago. And HIPAA came along later. And when HIPAA came along, HIPAA recognized that the Protection and Advocacy Acts and other federal laws already allow disclosure of protected health information in certain circumstances. So what HIPAA said in the required-by-law exception that if another law allows disclosure, HIPAA is not going to stand in its way. So I do want to push back on this notion that HIPAA and the Protection and Advocacy Acts are in tension. They are not. They complement one another. Both laws promote public health. Both laws protect patient privacy. And the required-by-law exception is right on point here. And that wasn't cited in Houston Behavioral's opening brief, but that's what controls here. I hear new arguments being made for the first time at argument here, but in their brief they didn't mention this key provision here. And, again, the Department of Health and Human Services has been clear and consistent in interpreting that. When HHS issued the required-by-law rule, it stated in informal guidance in issuing that that this was not to impede the protection and advocacy system. And HHS later codified that rule, specifically stating that HIPAA permits the disclosure of an individual's protected health information without the authorization of the individual to the protection and advocacy system when that disclosure is required by law. Where is that codified? That is in 45 CFR 1326.25e. So there is a regulation on point here that allows them to do this. And I heard a lot of questions about redaction. And the problem with redaction, and to be clear, the United States does not believe that redaction should be ordered. The protection and advocacy organizations need to be able to do the job that Congress told them to do, and that's investigating abuse and neglect. Now Congress, when it passed the protection and advocacy laws, gave protection and advocacy organizations broad authority not just for records but to go into facilities and to talk to patients and see what's going on. And over the years, Congress has repeatedly strengthened those, expanded the definition of records, expanded protection and advocacy organizations' ability to review documents. So Congress has spoken very clearly here. And, again, every circuit to interpret at least those words in the statute has held that the statute allows disclosure of confidential information. And that answers the HIPAA question. You know, HIPAA doesn't – this case does not turn on HIPAA. It turns on the interpretation of the Protection and Advocacy Acts. Because once you determine that the Protection and Advocacy Acts allow disclosure here, that answers the question that it is required by law and HIPAA provides for no liability. And another key aspect of these laws that I heard questions about is confidentiality. And that is a critical portion of these laws because it does protect the rights of third parties. And the confidentiality provisions also go to show why redaction should not be allowed here. Because by putting in a confidentiality provision, Congress recognized that there is going to be sensitive third-party information. You know, the other circuits that have decided this, they've talked about peer review records or student records. And I'd specifically draw the court's attention to the Seventh Circuit's decision in Disability Rights Wisconsin. There, the Protection and Advocacy Organization requested records of student names. And the agency redacted all the names. If you haven't found probable cause for each specific person on this list, you don't get them. And the Second Circuit said that's not right, that the Protection and Advocacy Organization is entitled to full disclosure, unredacted disclosure of the students' names. And that's because the Protection and Advocacy Organization couldn't do its job without a full investigation. And especially when there is allegations of abuse and neglect, a Protection and Advocacy Organization needs to be able to do a full investigation without restrictions imposed by the health care facility. This court said as much in the Cotton case, where it said that a hospital cannot tell a Protection and Advocacy Organization how to do its job. Now, certainly there may be situations where a hospital can seek judicial review. But we are asking this court to issue guidance so hospitals don't always have to go to court each time, so they can get these records promptly and be able to do the job that Congress asked them to do. So we are asking you to join with the other circuits and affirm the district court's ruling by holding that the Protection and Advocacy Act allow full disclosure of confidential information. Thank you. Thank you. Back to you, Mr. Knowles. I would like to just respond to a few of the points that were covered. HIPAA applies to providers and payers of health care services. It doesn't cover D.R. Texas. Their confidentiality requirements are not covered by HIPAA. It is covered by the P&A Acts, their provisions. HIPAA is an extensive regulatory regime that governs us but not D.R. Texas. The D.R. Wisconsin case that counsel for the DOJ just mentioned was a FERPA case, not a HIPAA case. It did not involve PHI. It involved student names. FERPA is an educational statute governing educational disclosure. Students have privacy rights. Some of the issues are the same, but HIPAA and FERPA are not the same. They don't cover the same interests in this case. The point about de-identification of PHI, including faces on videotapes, is an important provision of the HIPAA Code of Federal Regulations and the HIPAA statute itself. The CFR side is 164.514. There are breaches of HIPAA. If my client is compelled to release faces which are PHI of other people in the video, there may be some reasonable way of resolving the tension, not between the statutes. We believe the statutes can be reconciled. But the tension between D.R. Texas' inflexible view that redaction of faces has no place in the dispute between our parties. It can't be the case that if we have HIPAA liability and there is no HHS guidance, the HHS issues guidance to health providers to tell them what they can do. You might call it a get-out-of-jail-free card. There is no such card that we can rely on in this case. We certainly appreciate this DOJ saying that we are not thinking that it's a violation, but this DOJ is not the DOJ forever. The HHS... If we said it, that would be different because we are forever. Under Article III, you're more forever than I am. We're just forever. But going backwards beyond which particular DOJ is in place, to your knowledge, are there cases or instances where there has been enforcement under HIPAA against the health care providers? Well, I'm not familiar with the university cases, but there is a potential exposure here, certainly under the text of the statutes. And with all of the litigation in the country, there certainly are cases that I'm sure are more similar than our case, but our case is a pretty good example of what could happen. The de-identification provisions of HIPAA can easily be reconciled with the text of the P&A Acts if we interpret the P&A Acts as being limited to their text. The P&A statute by its text, there's several of them, but they all have similar provisions. It doesn't say that we get all your records. All your records are not ours, honestly. That's not what the law is. The records that are authorized to be released are those that relate to GS in this case. If there are records that contain third-party PHI, it must be de-identified under the terms of HIPAA. If the P&A Act were specifically said that you can release third-party PHI, we would not be here today. But the Act doesn't say that. The CFR doesn't say that. HHS guidance doesn't say that. And just because P&A agencies, in the worthwhile pursuit of their statutory duties, wish it were easier to obtain all the videotape that they want, that's not the way it works. May it please the court. All right. Thank you, counsel, both sides, for your briefing and arguments.